IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ADVANCE BUSINESS CAPITAL LLC D/B/A TRIUMPH BUSINESS CAPITAL, | § § § § | |
| Plaintiff, | § § | |
| v. | § § § | Civil Action No. 3:21-cv-2889-L |
| REGION CONSTRUCTION, INC., CORNELIU EMANUEL GOMBOS, FLORIN GOMBOS, and EZCONNECT INC., individually, jointly and severally, | § § § § § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the Motion of All Defendants to Dismiss or, Alternatively, for Judgment on the Pleadings (Doc. 13), filed January 25, 2022. After careful consideration of the motion, response,[1] pleadings, record, and applicable law, the court **grants** the Motion of All Defendants to Dismiss and **denies as moot** Defendants' alternative Motion for Judgment on the Pleadings.

**I. Procedural and Factual Background**

This action arises out of a factoring agreement between Plaintiff Advance Business Capital LLC d/b/a Triumph Business Capital ("Triumph"), a factoring company, and Defendant Region Construction, Inc. ("Region"). In its Original Complaint (Doc. 1), the live pleading, Triumph alleges the following facts, which the court assumes are true for purposes of resolving the pending motion.

---

[1] Defendants did not file a reply to Plaintiff's response.

Memorandum Opinion and Order - Page 1

### A. The Parties

Plaintiff Triumph is a Delaware limited liability company with a principal place of business in Dallas County, Texas. Compl. ¶ 1. Triumph's sole member is TBK Banking, SBB, a Texas banking corporation with its principal place of business in Dallas County, Texas. *Id.* Triumph is "in the factoring business, which business involves, *inter alia*, the purchasing of accounts ('Accounts') from businesses ('Factoring Client') with whom it has formed a contractual relationship, the terms of which are generally contained in invoices." *Id.* ¶ 11.[2] Within the factoring industry, the entity that purchases Accounts is referred to as the "Factor" or "Purchaser" of the accounts, in this case Triumph. The entity from whom the Accounts are purchased is commonly referred to as the "Factoring Client" or "Seller," in this case Defendant Region, a Kansas corporation with its principal place of business in Lincoln County, Kansas. *Id.* ¶¶ 11, 12. Defendant Florin Gombos ("F. Gombos"), a citizen of the State of Utah, is the president of Region. *Id.* ¶¶ 4, 18. Defendant Corneliu Emanual Gombos ("C. Gombos") is also a citizen of the State of Utah and is the president of Defendant EZConnect Inc. ("EZConnect"), an Iowa Corporation with a principal place of business in Dallas County, Iowa. *Id.* ¶¶ 3, 5.[3]

### B. The Buy-Out Agreement

Prior to November 29, 2019, "a company called Liquid Capital Exchange, Inc. ('Liquid Capital') had been factoring Region's accounts." *Id.* ¶ 13. On November 13, 2019, Region's

---

[2] Black's Law Dictionary (11th ed. West 2019) defines "factoring" as follows: "The buying of accounts receivable at a discount. The price is discounted because the factor [here Triumph] assumes the risk of delay in collection or loss on the accounts receivable." A "factor" is "someone who buys accounts receivable at a discount." *Id. See also* Wikipedia ("Factoring is a financial transaction and a type of debtor finance in which a business [here Region] sells its accounts receivable (i.e., invoices) to a third party (called a factor) [here, Triumph] at a discount." Factoring may be employed to allow the business seller to meet its cash needs. *Id.*

[3] The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

customer, Bear Communications, LLC ("Bear"), approached Triumph regarding the purchase of certain Liquid Capital Accounts, including accounts receivable related to construction services that Region would be providing to Bear. *Id.* ¶ 14. Thereafter, Triumph decided to purchase the Liquid Capital Accounts and Region Accounts. *Id.* Pursuant to a Buy-Out Agreement between Liquid Capital and Triumph, Triumph paid Liquid Capital 1,906,214.12 in exchange for Liquid Capital's termination of its rights to receive payment of Region's outstanding accounts. In addition, Liquid Capital agreed to "terminate its security interest in Region's Accounts . . . and cause any prior notices of assignment issued to Region's customers, including Bear, to be revoked in favor of Triumph." *Id.* ¶ 15.

### C. The Factoring Agreement

On or about November 26, 2019, Triumph entered into a Factoring and Security Agreement ("Factoring Agreement") with Region. *Id.* at Ex. A (Factoring Agreement), Doc. 1-1. Contemporaneously with the Factoring Agreement and as an incentive to Triumph, Region's principals, Defendants C. Gombos and F. Gombos, each executed a Personal Guaranty, and EZConnect executed a corporate guaranty (collectively, "Guaranties"), under which each agreed "to pay to Triumph on demand the entire indebtedness and all losses, costs, deficiencies, attorneys' fees and expenses" that Triumph may suffer by reason of Region's default on the Factoring Agreement. *See id.* at Ex. E (Guaranty of C. Gombos), Ex. F (Guaranty of F. Gombos), and Ex. G (Guaranty of EZConnect).

Under the Factoring Agreement, "Triumph acquired ownership of all outstanding and unpaid Accounts at the time of the Buy-Out Agreement and, thereafter, Region offered to sell, transfer, and assign to Triumph those Region's Accounts that were identified for sale after the Buy-Out Agreement." *Id.* ¶ 19. In addition to acquiring and perfecting a "first priority ownership

interest in the Accounts Triumph purchased from Region ('Purchased Accounts'), Region also granted Triumph a first priority security interest in various assets of Region which were identified in the Factoring Agreement as Collateral," which included "all of Region's then owned or later acquired Accounts and proceeds thereof ('Collateral')." *Id.* ¶ 20.

In accordance with the Factoring Agreement, "Region offered for sale and Triumph purchased and/or was assigned invoices (i.e., accounts) for goods sold and/or services rendered by Region to Bear (i.e., Account Debtors) which Accounts have matured but, nonetheless, payment has not been made by Bear or received by Triumph and which accounts total $3,398,091." *Id.* ¶ 22. Each of the matured unpaid Bear invoices "has individually matured and is delinquent, with the most recent invoice being overdue at least seven hundred (700) days from the invoice date." *Id.* ¶ 24. Triumph attaches to the Complaint the Aging Detail Lists of accounts arising from the matured unpaid Bear invoices as Exhibits C and D.

On April 20, 2020, Triumph and Region filed a petition against Bear in the District Court of Johnson County, Kansas, seeking to collect sums due and owning from Bear. *Id.* ¶ 25. On May 28, 2021, Bear filed a voluntary Chapter 11 Bankruptcy Case in the Bankruptcy Court in the District of Kansas, the effect of which invoked the Bankruptcy Code's automatic stay, thereby preventing Triumph from pursuing collection of accounts from Bear. *Id.* ¶ 26.

**D.  This Lawsuit**

On November 17, 2021, Triumph commenced this action asserting a breach of contract claim against (1) Region for breach of the Factoring Agreement, and (2) C. Gombos, F. Gombos, and EZConnect, for their alleged breaches of the Guaranties. With respect to Region, Triumph alleges that it purchased accounts receivable from Region, that Bear failed to pay the accounts, and that Region is required to repay those debts via the "Repurchase of Accounts" (or recourse)

provision of the Factoring Agreement. Specifically, Triumph alleges Region has committed "one or more material breaches of the Factoring Agreement, any one or more of which constitutes an event of default," including:

> (a) as a result of Triumph having exercised its resource rights, and Region's failure to repurchase the unpaid Purchased Accounts that: (i) Bear has indicated an inability or unwillingness to pay when due, or that has been disputed by Bear, or as a result of Bear having become Insolvent, or (ii) remain unpaid beyond the Repurchase Period, (i.e., 90 days after the invoice date(s));
>
> (b) Region's failure and/or refusal to pay and perform all Obligations[;] [and]
>
> (c) any one or more of the guarantor's failure to perform or observe guarantor's Obligations or duties under the guaranty agreements, more specifically described in Counts II – IV of this Complaint ("Region's Material Breaches").

*Id.* ¶ 34. Triumph alleges that as a direct and proximate result of Region's Material Breaches of the Factoring Agreement, it has been damaged and is entitled to recover its compensatory damages in the amount of $2,789,692.95, plus additional fees and expenses as provided by the Factoring Agreement, together with prejudgment interest, and attorneys' fees and costs from Region. *Id.* ¶ 38. Because Triumph alleges Region has failed to pay and is in default, Triumph seeks to enforce the recourse provision against Defendants C. Gombos, F. Gombos, and EZConnect, alleging they are obligated to pay it the foregoing amount to satisfy Region's liability pursuant to the terms of the Guaranties. *Id.* ¶¶ 39-59.

On January 25, 2022, Region filed its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, alternatively, for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). On February 23, 2022, Triumph filed its response. Region did not file a reply.

## II. Legal Standard – Fed. R. Civ. P. 12(b)(6)

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any

documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id*. (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint and not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can

be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

### III. Analysis

Section 2 of the Factoring Agreement provides, in pertinent part, that "[Region] shall offer for sale to [Triumph], as absolute owner and with full recourse, such of [Region's] Accounts as are listed from time to time on each Schedule of Accounts." Compl., Ex. A (Factoring Agreement § 2.1), Doc. 1-1.

Section 6 of the Factoring Agreement contains, in relevant part, a repurchase provision which provides:

> **Repurchase of Accounts**. Triumph may demand that [Region] Repurchase a Purchased Account by requiring payment or at Triumph's option, by debiting the Reserve Account of the then unpaid Face Amount of such Purchased Account together with any unpaid fees including those described in Section 3 above, in connection with each of the following:
>
> 6.1. Any Purchased Account in respect to which (a) a Payor has indicated an inability or unwillingness to pay the Purchased Account when due or (b) remains unpaid beyond the Repurchase Period or (c) in Triumph's Discretion a Payor qualifies as Insolvent;
>
> 6.2. Any Purchased Account, the right to receive payment of which has been disputed by a Payor, Triumph being under no obligation to determine the bona fides of such dispute;
>
> 6.3. Any Purchased Account in respect to which [Region] has breached any representation, warranty or covenant as set forth in the Sections 8 and 9; and
>
> 6.4. All Purchased Accounts upon occurrence of an Event of Default or upon the termination date of this Agreement.

*Id.* at Ex. A (Factoring Agreement § 6), Doc. 1-1. Schedule A to the Factoring Agreement provides that the repurchase period is 90 days. *Id.* at Ex. A, Schedule A.

Section 10 of the Factoring Agreement, titled "Default," provides, in relevant part, as follows:

> 10.1. Events of Default. The following will constitute an Event of Default hereunder: (a) [Region's] failure to pay any Obligation or perform any provision under this Agreement or any other agreement now or hereafter entered into with Triumph; (b) any covenant, warranty or representation contained in this Agreement proves to be false in any way, howsoever minor, . . . (d) any guarantor fails to perform or observe any of such guarantor's duties or obligations to Triumph . . .; (f) Triumph, in good faith, deems itself insecure with respect to the prospect of repayment or performance of the Obligations or any other required performance under this Agreement.

*Id.* at Ex. A (Factoring Agreement § 10.1). Section 10.2 of the Factoring Agreement titled "Effect of Default," states that "[u]pon the occurrence of any Event of Default, in addition to any rights Triumph has under this Agreement or applicable law, Triumph may, without notice, immediately terminate this Agreement and/or declare all Obligations immediately due and payable and all fees shall accrue and be payable at the Default Fees rate." *Id.* at Ex. A (Factoring Agreement § 10.2).

Defendants move to dismiss the Complaint pursuant to Rule 12(b)(6). In support, they argue:

> Plaintiff [Triumph], a factoring company, alleges that defendant Region owes it for the invoices – right to receive money from Bear - it purchased from Region at 90% of value. It alleges that it has this right by virtue of the repurchase clause in the agreement between Region and Plaintiff. *See* Complaint, ¶ 33 (Repurchase of Accounts). However, demand for repurchase must be made within the "Repurchase Period" – which is defined in the agreement. *See* Exhibit A and attached Schedule A. The repurchase period is 90 days. As can be seen by Exhibit[s] C and D [to the Complaint], the invoice dates are in November and December of 2019. This suit was filed on November 17, 2021, nearly two years after the accounts were purchased. Indeed, Plaintiff [Triumph] alleges that the accounts are over 700 days overdue. *See* Complaint ¶ 24. The time to demand repurchase has passed.

Defs.' Brief Supp. Mot. Dismiss 4-5, Doc. 14.

Defendants also maintain that the Complaint contains no allegation that demand was made by Triumph to repurchase the account at any time—much less within the Repurchase Period defined in the Factoring Agreement as 90 days. *Id.* Instead, Defendants argue, Triumph chose to pursue Bear for payment of the invoices, rather than Region. *See id.* at 5 (citing Compl. ¶ 25). According to Defendants: "Without a proper demand within the Repurchase Period, there is no default under the agreement. With no default under the agreement, there is no breach. With no breach and no default, there is no default under the guaranty agreements." *Id.*

In response, Triumph contends that its right to plead a claim for breach of the Factoring Agreement and Guaranties "is not, as argued by Defendants, dependent solely on an express claim for breach of the repurchase provisions." Triumph's Resp. Brief 5, Doc. 18. Triumph argues that it has alleged a default under the Factoring Agreement by Region separate and apart from a breach of the repurchase provisions, specifically under Section 10. With regard to the Guaranties, Triumph contends the language in the Guaranties "unambiguously permits a claim for breach without regard to a claim under the repurchase obligation section of the Factoring Agreement." *Id.* at 7.

The parties agree that Texas law governs the dispute at hand, as they both rely on Texas law in briefing their respective arguments, and the Factoring Agreement contains a Texas choice of law provision. "In Texas, [t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quotation marks and citation omitted). "A breach occurs when a party fails to perform a duty required by the contract." *Id.* "Whether a party has breached a contract is a question of law for the court." *X Techs.,*

*Inc. v. Marvin Test Sys., Inc.*, 719 F.3d 406, 413 (5th Cir. 2013) (quoting *Meek v. Bishop Peterson & Sharp, P.C.*, 919 S.W.2d 805, 808 (Tex. App.—Houston [14th Dist.] 1996, writ denied)).

"In construing a contract under Texas law, courts must examine and consider the entire writing and give effect to all provisions such that none are rendered meaningless." *International Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 497 (5th Cir. 2002) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). Contract provisions "cannot be read in isolation; all of the provisions must be considered with reference to the whole." *In re Ford Motor Co.*, 211 S.W.3d 295, 298 (Tex. 2006); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) ("No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument."). Contract provisions must also be interpreted "so as to avoid meanings that produce unreasonable, oppressive, or absurd results." *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 114 (5th Cir. 2010) (citation omitted); *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311 (Tex. 2005) (per curiam) ("[C]ourts construe contracts from a utilitarian standpoint bearing in mind the particular business activity sought to be served, and will avoid when possible and proper a construction [that] is unreasonable, inequitable, and oppressive."). In addition, courts "presume parties intend what the words of their contract say" and "strive to honor the parties' agreement and not remake their contract by reading additional provisions into it." *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010) (citations omitted).

When contractual language can be given a certain or definite meaning, it is unambiguous and interpreted as a matter of law by the court. *DeWitt Cnty. Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999) (footnote and citation omitted). Regarding ambiguity, the court in *DeWitt* explained:

> A term is not ambiguous because of a simple lack of clarity. Nor does an ambiguity arise merely because parties to an agreement proffer different interpretations of a term. An ambiguity arises only after the application of established rules of construction leaves an agreement susceptible to more than one meaning. Further, for an ambiguity to exist, both potential meanings must be reasonable.

*Id.* Whether a contract is ambiguous is a question of law for the court. *R & P Enter. v. LaGuarta, Gavrel & Kirk*, 596 S.W.2d 517, 518 (Tex. 1980).

Neither party argues that the language in the Factoring Agreement is ambiguous. As noted, Triumph maintains that its claim for breach of the Factoring Agreement and Guaranties "is not, as argued by Defendants, dependent solely on an express claim for breach of the repurchase provisions." Triumph's Resp. Brief 5, Doc. 18. Instead, Triumph argues that Section 10 of the Factoring Agreement enumerates other conduct that may give rise to a default. Triumph argues that "Section 6 of the Factoring Agreement which addresses Repurchase Obligations is not even expressly referenced or incorporated into Section 10.1, which enumerates the conduct that may give rise to an event of Default." *Id.* at 9. Triumph contends that Region, in focusing on Section 6, has "incorrectly construed both the Factoring Agreement and [Guaranties]." *Id.*

The court agrees that the language of the Factoring Agreement is unambiguous and that Section 6, the repurchase section upon which Defendants rely in their motion to dismiss, is not the sole and exclusive remedy under the Factoring Agreement. Undergirding Triumph's response brief, however, is the assumption that the Complaint, even liberally construed, can be read to assert a breach of the Factoring Agreement under any provision other than Section 6. Although Triumph includes a verbatim recitation of Section 10 in the Complaint, *see* Compl. ¶ 33, its nonconclusory allegations concerning a breach of the Factoring Agreement relate to Region's alleged failure to repurchase the unpaid Purchased Accounts. *See, e.g., id.* ¶ 35.

Under Section 6 of the Factoring Agreement, demand for repurchase must be made within the "Repurchase Period," which is defined in the agreement. *See* Exhibit A and attached Schedule A. The repurchase period is 90 days. *Id.* Exhibits C and D to the Complaint reveal that the invoice dates are in November and December of 2019. This suit was filed on November 17, 2021, nearly two years after the accounts were purchased. Triumph itself alleges that the accounts are more than 700 days overdue. *See* Complaint ¶ 24. The court, therefore, agrees with Defendants that "[t]he time to demand repurchase has passed." Defs.' Brief Supp. Mot. Dismiss 4-5, Doc. 14.

In summary, even viewing all well-pleaded allegations as true and drawing all reasonable inferences in Triumph's favor, the court concludes that Triumph has failed to adequately allege a breach of the Factoring Agreement by Region. Specifically, based on the allegations in the Complaint and the documents attached to the Complaint, Triumph has not pleaded that it demanded recourse under the repayment clause in Section 6 during the Repurchase Period and, therefore, it has failed to allege a default or breach of the Factoring Agreement. While Triumph is correct that there are multiple provisions in the Factoring Agreement addressing default other than Section 6, Triumph has failed to allege any acts by Region triggering those other provisions. Absent default, there is no breach of the Factoring Agreement by Region. As the obligations of C. Gombos, F. Gombos, and EZConnect are only triggered by a default by Region of the Factoring Agreement, *see* Compl. at Exs. E, F, G, Triumph has failed to state a claim for breach of the Guaranties. In other words, Triumph has failed to plead sufficient facts for the court to make the reasonable inference that Defendants are liable for the conduct alleged.

For these reasons, the court will grant Defendants' motion to dismiss the Complaint for failure to state a claim under Rule 12(b)(6). As such, the court need not reach Defendants' motion for judgment on the pleadings under Rule 12(c), and will deny it as moot.

## IV. Conclusion

For the reasons herein set forth, the court **grants** Defendants' Motion to Dismiss and **denies as moot** Defendants' Motion for Judgment on the Pleadings. The court **dismisses without prejudice** Triumph's breach of contracts claims against Region for breach of the Factoring Agreement and against C. Gombos, F. Gombos, and EZConnect for breach of the Guaranties.

The court believes, because of Supreme Court and Fifth Circuit precedent, that Triumph should be permitted an opportunity to amend its pleadings with respect to those allegations that are factually deficient. In addition, Triumph requests leave to amend. Accordingly, Triumph shall file an amended complaint by **May 19, 2022**. If Triumph fails to cure the pleading deficiencies identified by the court by this date, this action is subject to dismissal with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), or without prejudice pursuant to Federal Rule of Civil Procedure 41(b) for failure to comply with a court order.

**It is so ordered** this **28th** day of **April, 2022**.

Sam A. Lindsay
United States District Judge