## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **ADVANCE BUSINESS CAPITAL LLC D/B/A TRIUMPH BUSINESS CAPITAL,** | § § § § | |
| Plaintiff, | § § | |
| **v.** | § § | **Civil Action No. 3:21-cv-2889-L** |
| **REGION CONSTRUCTION, INC., CORNELIU EMANUEL GOMBOS, FLORIN GOMBOS, and EZCONNECT INC., individually, jointly and severally,** | § § § § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the court is the Motion of All Defendants to Dismiss Plaintiff's Amended Complaint or for Summary Judgment ("Motion") (Doc. 24), filed June 13, 2022. After careful consideration of the Motion, response, reply, pleadings, evidence, record, and applicable law, the court **denies** the Motion.

### I.  Procedural and Factual Background

This case is the subject of a prior memorandum opinion. *See Advance Bus. Cap. LLC d/b/a Triumph Business Capital v. Region Constr., Inc. et al.*, No. 3:21-CV-2889-L, 2022 WL 1265928 (N.D. Tex. Apr. 28, 2022) ("*Triumph I*"). The court assumes the parties' familiarity with the facts and legal analysis in *Triumph I* and recounts only the facts and procedural history necessary to understand this decision.

### A. Plaintiff's Original Complaint

On November 17, 2021, Plaintiff Advance Business Capital LLC d/b/a Triumph Business Capital ("Triumph" or "Plaintiff") commenced this action against Defendants Region Construction, Inc. ("Region"); Florin Gombos ("F. Gombos"); Corneliu Emanual Gombos ("C. Gombos"); and EZConnect Inc. ("EZConnect") arising from the alleged breach of a factoring agreement between Triumph and Region.[1] In its Original Complaint (Doc. 1), Triumph alleged the following facts. On November 26, 2019, it entered into a Factoring and Security Agreement ("Factoring Agreement") with Region, pursuant to which Region sold its right, title, and interest in and to certain of its accounts receivable ("Purchased Accounts") to Triumph, specifically invoices and accounts for goods sold and services rendered by Region to Bear Communications, LLC ("Bear"), the account debtor. The Purchased Accounts had matured, but Bear had not made any payments. The Factoring Agreement also granted Triumph a first priority ownership interest in the Purchased Accounts and a first priority security interest in Region's collateral.

Contemporaneously with the Factoring Agreement and as an incentive to Triumph, Region's principals, Defendants C. Gombos and F. Gombos, each executed a Personal Guaranty, and EZConnect executed a corporate guaranty (collectively, "Guaranties"), under which each agreed "to pay to Triumph on demand the entire indebtedness and all losses, costs, deficiencies, attorneys' fees and expenses" that Triumph may suffer by reason of Region's default on the Factoring Agreement. *See* Orig. Compl. at Ex. E (Guaranty of C. Gombos), Ex. F (Guaranty of F. Gombos), and Ex. G (Guaranty of EZConnect).

---

[1] Black's Law Dictionary (11th ed. West 2019) defines "factoring" as follows: "The buying of accounts receivable at a discount. The price is discounted because the factor [here Triumph] assumes the risk of delay in collection or loss on the accounts receivable." A "factor" is "someone who buys accounts receivable at a discount." *Id.*

Triumph asserted a breach of contract claim against (1) Region for breach of the Factoring Agreement, and (2) C. Gombos, F. Gombos, and EZConnect, for breach of the Guaranties. With respect to Region, Triumph contended that it purchased accounts receivable from Region, that Bear failed to pay the accounts, and that Region was required to repay those debts via the "Repurchase of Accounts" provision of the Factoring Agreement. Triumph further alleged that Region had committed "one or more material breaches of the Factoring Agreement, any one or more of which constitutes an event of default." Orig. Compl. ¶ 34. Triumph contended that as a direct and proximate result of Region's material breaches of the Factoring Agreement, it had been damaged and was entitled to recover its compensatory damages in the amount of $2,789,692.95, plus additional fees and expenses as provided by the Factoring Agreement, together with prejudgment interest, and attorney's fees and costs from Region. Trimph also contended that Defendants C. Gombos, F. Gombos, and EZConnect were obligated to pay it the foregoing amounts to satisfy Region's liability pursuant to the terms of the Guaranties.

### B.  Defendants' Motion to Dismiss Original Complaint

On January 25, 2022, Defendants filed their motion to dismiss the Original Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, alternatively, for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* Doc. 13. In support, Defendants argued that Triumph failed to state a breach of contract claim because it did not allege that it requested that Region repurchase the accounts during the contractually defined "Repurchase Period."  Specifically, Defendants argued:

> Plaintiff [Triumph], a factoring company, alleges that defendant Region owes it for the invoices – right to receive money from Bear - it purchased from Region at 90% of value. It alleges that it has this right by virtue of the repurchase clause in the agreement between Region and Plaintiff. *See* Complaint, ¶ 33 (Repurchase of Accounts). *However, demand for repurchase must be made within the "Repurchase Period" – which is defined in the agreement. See* Exhibit A and attached Schedule

> A. The repurchase period is 90 days. As can be seen by Exhibit[s] C and D [to the Complaint], the invoice dates are in November and December of 2019. This suit was filed on November 17, 2021, nearly two years after the accounts were purchased. Indeed, Plaintiff [Triumph] alleges that the accounts are over 700 days overdue. *See* Complaint ¶ 24. The time to demand repurchase has passed.

Defs.' Br. in Supp. Mot. Dismiss Orig. Compl. 4-5 (Doc. 14) (emphasis added). In response, Triumph did not address Region's contention that, pursuant to the Factoring Agreement, demand for repurchase must be made within the "Repurchase Period" of 90 days of the invoice date. Rather, Triumph argued that it had adequately alleged numerous breaches of the Factoring Agreement, including breaches that did not depend upon the repurchase clause. *See generally* Pl.'s Resp. (Doc. 17).

### C.  The Court's Ruling in *Trimph I*

Relying on Defendants' interpretation of the contractual "Repurchase Period," the court granted Region's motion to dismiss the Original Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), stating:

> In summary, even viewing all well-pleaded allegations as true and drawing all reasonable inferences in Triumph's favor, the court concludes that Triumph has failed to adequately allege a breach of the Factoring Agreement by Region. Specifically, based on the allegations in the Complaint and the documents attached to the Complaint, Triumph has not pleaded that it demanded recourse under the repayment clause in Section 6 during the Repurchase Period and, therefore, it has failed to allege a default or breach of the Factoring Agreement.

*Triumph I*, 2022 WL 1265928, at *7. Further, the court rejected Triumph's argument that it had adequately alleged numerous breaches of the Factoring Agreement, including breaches that did not depend upon the repurchase clause, explaining:

> While Triumph is correct that there are multiple provisions in the Factoring Agreement addressing default other than Section 6, Triumph has failed to allege any acts by Region triggering those other provisions. Absent default, there is no breach of the Factoring Agreement by Region. As the obligations of C. Gombos, F. Gombos, and EZConnect are only triggered by a default by Region of the Factoring

> Agreement, *see* Compl. at Exs. E, F, G, Triumph has failed to state a claim for breach of the Guaranties. In other words, Triumph has failed to plead sufficient facts for the court to make the reasonable inference that Defendants are liable for the conduct alleged.

*Id.* The court, however, permitted Triumph "an opportunity to amend its pleadings with respect to those allegations that are factually deficient." *Id.*

### D. Triumph's Amended Complaint

On May 18, 2022, Triumph filed its Amended Complaint (Doc. 20), the live pleading. Triumph alleges the following well-pleaded facts, which the court accepts as true for purposes of ruling on the motion to dismiss.

*1. The Factoring Agreement and Bear's Non-Payment of Matured Invoices*

Pursuant to the Factoring Agreement, Region sold to Triumph its right, title, and interest in and to the Purchased Accounts related to goods sold and services rendered by Region to Bear, the account debtor. Am. Compl. ¶ 22. Although the Purchased Accounts had matured, Bear had not made any payments. *Id.* The Purchased Accounts and the accounts in which Triumph held a first priority perfected security interest totaled $3,398,091 (the "Matured Unpaid Bear Invoices"). *Id.* The payment term for each of the Matured Unpaid Bear Invoices was "Net 7" days. *Id.* ¶ 23. Each of the Matured Unpaid Bear Invoices "has individually matured and become delinquent, with the most recent invoice being overdue at least seven hundred days from the invoice date." *Id.* ¶ 24.

In light of Bear's delinquency, Triumph terminated the Factoring Agreement by ceasing to make any further "Purchase Price" advances (as defined in the Factoring Agreement) and made an oral demand on Region ("Pre-April 2020 Demand") to remit payment on all accounts due. *Id.* ¶ 36. In response, Region informed Triumph it did not have the financial ability to remit payment. *Id.* Triumph elected at that time not to pursue its claims against Region but instead to seek recovery from Bear jointly with Region. *Id.*

**Memorandum Opinion and Order - Page 5**

2. *Triumph and Region Jointly Pursue Bear*

On April 20, 2020, pursuant to a Joint Prosecution Agreement to pursue the defaulting account debtor (Bear), "Region and Triumph, jointly, filed a Petition against Bear in the District Court of Johnson County, Kansas ('Joint Petition')" to "seek to collect from Bear sums due on the Matured Unpaid Bear Invoices owing to Triumph." *Id.* ¶ 33. Paragraph 21 of the Joint Petition, which was approved by Region before filing, averred that:

> **Although Region has technically committed an Event of Default under the Factoring Agreement by having, inter alia, failed to pay Obligations or perform each provision under the Factoring Agreement, more specifically, effectuating a repurchase of all Matured Unpaid Bear Invoices**; nonetheless, Triumph has, to date, elected not to declare Region in default due to the default having occurred as a result of the intentional and unjustified breach of the underlying contract, more specifically described in Section VI below, by Bear which has caused Region significant financial difficulties which necessitated and caused Triumph to cease providing any additional Purchase Price payments to Region under the Factoring Agreement due to the significant amount of unpaid Accounts by Bear, of which $2,965,141.00 represents Purchased Accounts and $432,950.00 represents Accounts in which Triumph holds a first priority duly perfected security interest.

*Id.* ¶ 34 (Triumph's emphasis).

3. *Bear's Bankruptcy and Triumph's Decision to Pursue Region and the Guarantors*

On May 28, 2021, Bear filed a voluntary Chapter 11 Bankruptcy Case, in the Bankruptcy Court, District of Kansas, the effect of which invoked the Bankruptcy Code's automatic stay, thereby staying any efforts by Triumph and Region to continue to pursue collection of the Matured Unpaid Bear Invoices from Bear (the "Bear Bankruptcy"). *Id.* ¶ 37. As a result of the Bear Bankruptcy and Triumph's recognition that there was little likelihood of any meaningful recovery from Bear, on August 19, 2021, Triumph's counsel issued a Settlement Demand Letter to Region's counsel in which Triumph's counsel expressly made a "Pre-Suit Settlement Offer" demanding that Region agree to pay Triumph $2,789,692.95, the sum due in respect to the "Repurchase" (as

defined in Paragraph 1.36 of the Factoring Agreement) price of the Matured and Unpaid Invoices ("August 2021 Written Demand"). *Id.* ¶ 38 and Ex. E.

Region failed to respond to the August 2021 Written Demand. *Id.* ¶ 39. Triumph, therefore, elected to terminate its forbearance and exercise its rights to pursue Region and the guarantors by filing this lawsuit. *Id.*

### 4.  *Count One of the Amended Complaint*

In Count One of the Amended Complaint, Triumph contends Region breached Sections 6 and 10 of the Factoring Agreement.

Section 6 of the Factoring Agreement provides, in relevant part:

> **Repurchase of Accounts**. Triumph may demand that [Region] Repurchase a Purchased Account by requiring payment or at Triumph's option, by debiting the Reserve Account of the then unpaid Face Amount of such Purchased Account together with any unpaid fees including those described in Section 3 above, in connection with each of the following:

> 6.1. **Any Purchased Account in respect to which** (a) a Payor has indicated **an inability or unwillingness to pay the Purchased Account when due** or (b) **remains unpaid beyond the Repurchase Period** or (c) in Triumph's Discretion a Payor qualifies as Insolvent;

> 6.2. **Any Purchased Account, the right to receive payment of which has been disputed by a Payor**, Triumph being under no obligation to determine the bona fides of such dispute;

> 6.3. Any Purchased Account in respect to which [Region] has breached any representation, warranty or covenant as set forth in the Sections 8 and 9; and

> 6.4. **All Purchased Accounts** upon occurrence of an Event of Default or **upon the termination date of this Agreement**.

*Id.* ¶ 43 and Ex. A (Factoring Agreement § 6) (Triumph's emphasis).

Triumph alleges that, pursuant to Section 6, it was entitled to make its Pre-April 2020 Demand and its August 2021 Written Demand upon Region to "Repurchase" the Matured Unpaid Bear Invoices since one or more of the following arose:

       a.  Bear indicated an inability or unwillingness to pay the Matured and Unpaid Invoices, and/or,

       b.  the Matured and Unpaid Invoices remained unpaid beyond the Repurchase period (i.e., at least 90 days after the payment date of "Net 7" days from the invoice date establishing the maturity dates), and/or,

       c.  Region and Triumph's right to receive payment of the Purchased Accounts was disputed, in part, by Bear, and,

       d.  as to all Purchased Accounts, either due to Region having committed an Event of Default or upon the termination date of the Factoring Agreement.

*Id.* ¶ 44 (collectively, "Repurchase Trigger Events").

Triumph alleges it "waited until the expiration of the 'Repurchase Period' (as defined in Section 1.35) *which period pursuant to Schedule A was 90 days after maturity of the Matured and Unpaid Invoices*, within which to make its Demands that Region 'Repurchase' . . . all such Purchased Accounts," together with any unpaid fees in connection therewith (as provided in subsections 6.1 and 6.4 of the Factoring Agreement). *Id.* ¶ 45 (emphasis added).

Triumph further contends that, after Region informed Triumph of its inability to satisfy its Repurchase Obligations, Triumph elected to forbear from exercising its rights to recover from Region or to declare all "Obligations" (as such term is defined by Section 1.28 of the Factoring Agreement) immediately due and payable, as was its right under Sections 6 and 10 of the Factoring Agreement. *Id.* ¶ 47. Triumph alleges its decision to forbear was a result of its agreement with Region to seek recovery jointly from Bear in the Joint Petition against Bear filed in the District Court of Johnson County, Kansas. *Id.* After Bear commenced its bankruptcy case, however, Triumph terminated its forbearance and elected to pursue its rights against Region for recovery. *Id.*

Section 10 of the Factoring Agreement, titled "Events of Default," provides, in relevant part, that:

10.1. **Events of Default.** The following will constitute an Event of Default hereunder: (a) **[Region's] failure to pay any Obligation or perform any provision under this Agreement or any other agreement now or hereafter entered into with Triumph**; (b) any covenant, warranty or representation contained in this Agreement proves to be false in any way, howsoever minor, . . . (d) **any guarantor fails to perform or observe any of such guarantor's duties or obligations to Triumph**; (f) **[Triumph], in good faith, deems itself insecure with respect to the prospect of repayment or performance of the Obligations or any other required performance under this Agreement**.

*Id.* ¶ 48 and Ex. A (Factoring Agreement § 10.1) (Triumph's emphasis).

Triumph contends that Region committed the following Events of Default:

a.  Region failed to pay its Repurchase Obligations as required by the Factoring Agreement, and/or,

b.  Region breached the Factoring Agreement due to any of the guarantor(s)' failure to perform or observe the guarantors' duties or obligations to Triumph, and/or,

c.  an Event of Default occurred when around the time of the execution of the Buyout Agreement with Liquid Capital, Triumph learned that Bear had at first purportedly promise[d] to pay all Matured and Outstanding Invoices and then immediately thereafter failed to do so and failed and refused to explain any basis for its failure to do so or communicate with Triumph at which time Triumph, in good faith, deemed itself insecure with respect to the prospect of repayment or performance of the Obligations or any other required performance under this Agreement.

*Id.* ¶ 49 (collectively, "Region's Events of Default").

Pursuant to Section 10.2 of the Factoring Agreement titled "Effect of Default,"

[u]pon the occurrence of any Event of Default, in addition to any rights Triumph has under this Agreement or applicable law, Triumph may, without notice, immediately terminate this Agreement and/or declare all Obligations immediately due and payable and all fees shall accrue and be payable at the Default Fees rate.

*Id.* ¶ 50 and Ex. A (Factoring Agreement § 10.12).

Triumph alleges that, as set forth in paragraphs 36 and 38 of its Amended Complaint, it

"terminated the Factoring Agreement and declared all Obligations together with Default Fees to

have been deemed immediately due and payable from Region, and Region failed and/or refused to satisfy its Obligations to Triumph." *Id.* ¶ 51.

Triumph also contends that "[a]s a direct and proximate result of Region's Material Breaches of the Factoring Agreement, [it] has been damaged and is entitled to recover its compensatory damages in the amount of $2,789,692.95, plus additional fees and expenses as provided by the Factoring Agreement[.]" *Id.* ¶ 52. Triumph seeks prejudgment interest, and pursuant to Section 17 of the Factoring Agreement, reimbursement of its attorney's fees and costs from Region. *Id.*

### 5. *Counts Two, Three, and Four of the Amended Complaint*

In Counts Two through Four of the Amended Complaint, Triumph brings breach of contract claims against Defendants C. Gombos, F. Gombos, and EZConnect pursuant to the Guaranties. *See id.* ¶¶ 53-73. Triumph contends that C. Gombos and F. Gombos each breached his or her personal guaranty "by failing to pay to Triumph, upon demand, the entire indebtedness and all losses, costs, deficiencies, attorneys' fees and expenses which have been and will be suffered by Triumph due to Region's Events of Default as more specifically described in Count I paragraph 49." *Id.* ¶¶ 57, 64. Triumph contends that EZConnect breached its corporate guaranty "by failing to pay to Triumph, upon demand, the entire indebtedness and all losses, costs, deficiencies, attorneys' fees and expenses which have been and will be suffered by Triumph due to Region's Events of Default under the Factoring Agreement." *Id.* ¶ 71.

### 6. *The Pending Motion*

On June 13, 2022, Defendants moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. *See* Defs.' Mot. to Dismiss Pl.'s Am. Compl. or Mot. for

Summ. J. (Doc. 24); Br. in Support (Doc. 25). On July 15, 2022, after receiving an extension of time from the court, Triumph filed a response to the motion, as well as two briefs, one in support of its response to Defendants' motion to dismiss and one in support of its response to Defendants' alternative motion for summary judgment. *See* Pl.'s Resp. to Defs.' Mot. (Doc. 33); Pl.'s Br. in Resp. to Mot. to Dismiss (Doc. 34); Pl.'s Br. in Resp. to Mot. for Summ. J. (Doc. 36). On July 29, 2022, Defendants filed their reply brief. *See* Defs.' Reply (Doc. 38). The motion is ripe for adjudication.

## II.  Legal Standards

### A.   Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading

**Memorandum Opinion and Order - Page 11**

do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint and not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth."

*Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

### B.  Motion for Summary Judgment Under Fed. R. Civ. P. 56

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make

credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587. *(*citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude

the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III. Defendants' Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

Defendants contend that Triumph's amended allegations fail to cure the pleading deficiencies detailed by the court in *Triumph I* and, therefore, the court should grant their motion to dismiss. Viewing all well-pleaded allegations in the Amended Complaint as true, and after considering the legal briefing and applicable law, the court disagrees.  For the reasons that follow, the court concludes that Triumph has adequately alleged a breach of Sections 6 and 10 of the Factoring Agreement by Region and of the Guaranties by C. Gombos, F. Gombos, and EZConnect.

### A.  Principles of Contract Interpretation and Breach of Contract Under Texas Law

The parties agree that Texas law governs the dispute at hand, as they both rely on Texas law in briefing their respective arguments, and the Factoring Agreement contains a Texas choice of law provision. "In construing a contract under Texas law, courts must examine and consider the entire writing and give effect to all provisions such that none are rendered meaningless." *International Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 497 (5th Cir. 2002) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). Contract provisions "cannot be read in isolation; all of the provisions must be considered with reference to the whole." *In re Ford Motor Co.*, 211 S.W.3d 295, 298 (Tex. 2006); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) ("No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument."). Contract provisions must also be

interpreted "so as to avoid meanings that produce unreasonable, oppressive, or absurd results." *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 114 (5th Cir. 2010) (citation omitted); *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311 (Tex. 2005) (per curiam) ("[C]ourts construe contracts from a utilitarian standpoint bearing in mind the particular business activity sought to be served, and will avoid when possible and proper a construction [that] is unreasonable, inequitable, and oppressive."). In addition, courts "presume parties intend what the words of their contract say" and "strive to honor the parties' agreement and not remake their contract by reading additional provisions into it." *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010) (citations omitted).

When contractual language can be given a certain or definite meaning, it is unambiguous and interpreted as a matter of law by the court. *DeWitt Cnty. Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999) (footnote and citation omitted). Regarding ambiguity, the court in *DeWitt* explained:

> A term is not ambiguous because of a simple lack of clarity. Nor does an ambiguity arise merely because parties to an agreement proffer different interpretations of a term. An ambiguity arises only after the application of established rules of construction leaves an agreement susceptible to more than one meaning. Further, for an ambiguity to exist, both potential meanings must be reasonable.

*Id.* Whether a contract is ambiguous is a question of law for the court. *R & P Enter. v. LaGuarta, Gavrel & Kirk*, 596 S.W.2d 517, 518 (Tex. 1980). Neither party contends the terms of the Factoring Agreement are ambiguous, and the court concludes the terms are unambiguous.

"In Texas, [t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quotation marks and citation omitted).

**Memorandum Opinion and Order - Page 16**

"A breach occurs when a party fails to perform a duty required by the contract." *Id.* "Whether a party has breached a contract is a question of law for the court." *X Techs., Inc. v. Marvin Test Sys., Inc.*, 719 F.3d 406, 413 (5th Cir. 2013) (quoting *Meek v. Bishop Peterson & Sharp, P.C.*, 919 S.W.2d 805, 808 (Tex. App.—Houston [14th Dist.] 1996, writ denied)).

### B. Analysis

In support of its motion to dismiss for failure to state a claim, Defendants reiterate many of the same arguments made in their motion to dismiss the Original Complaint. Defendants argue:

> While Plaintiff has a right to require repurchase of the invoices [under Section 6 of the Factoring Agreement] – this right must be exercised within 90 days of the purchase of the invoices. As the complaint shows, the invoices were purchased sometime in November and December of 2019 – and the 90 day repurchase period has expired. . . . The exercise of the right to require repurchase of the invoices is a condition precedent to any obligation of Region to pay. Region's obligation to repay Plaintiff is a condition precedent to the obligation of any of the guarantors to pay.

Defs.' Br. 1 (Doc. 25). Defendants further note that in *Triumph I*, the court "found (1) that under Section 6 of the factoring agreement, demand for repurchase must be made within the repurchase period, and (2) that the time for repurchase has passed." *Id.* at 7. Defendants also contend that the notices that Triumph alleges it made requiring Region to repurchase the accounts were untimely and inadequate. The court addresses each argument in turn.

### 1. *The Factoring Agreement*

#### a. *Section 6.1(b)*

Defendants argue that "[w]hile Plaintiff has a right to require repurchase of the invoices – this right must be exercised **within 90 days** of the purchase of the invoices. As the Complaint shows, the invoices were purchased sometime in November and December 2019 – and the 90 day period has expired." Defs.' Mot. to Dismiss 1 (Doc. 24) (emphasis added). This is the same argument Defendants made in support of their motion to dismiss the Original Complaint. At that

time, Triumph did not contend that Defendants were misstating or misinterpreting the relevant contractual language. In *Triumph I*, the court accepted Defendants' argument premised on its interpretation of Section 6.1(b) and granted their motion to dismiss. By contrast, in response to Defendants' pending motion to dismiss the Amended Complaint, Triumph maintains for the first time that Defendants erroneously "misstate the Factoring Agreement language" and fail to "[q]uote the correct operative language in Section 6.1(b) of the Factoring Agreement, which does not require Triumph to notify Region of Triumph's right to repurchase accounts **within** 90 days of the purchase of the invoices." Pl.'s Br. in Supp. of Resp. to Defs.' Mot. to Dismiss 4-5 (Doc. 34) (Triumph's emphasis). Triumph urges the court to reconsider its conclusion in *Triumph I* that demand for repurchase must be made **within** the "Repurchase Period," which is defined in Schedule A to the Factoring Agreement as ninety days. According to Triumph:

> The language in the Factoring Agreement contained in Section 6.1(b) unambiguously reads as follows "Triumph may demand that Client Repurchase a Purchased Account . . . in respect to which remains unpaid **beyond** the Repurchase Period." (emphasis added). The Factoring Agreement in Section 1.35 states the "Repurchase Period" is provided in Schedule A. Factoring Agreement, App. 0005. Schedule A to the Factoring Agreement, entitled "Pricing and Terms", has a Repurchase Period of 90 days. Accordingly, Sections 6.1(b) and 1.35 read together provide Triumph with the right to demand that a client repurchase any Purchase Accounts that remain unpaid by the account debtor (i.e., Payor) and outstanding beyond 90 days.

*Id.* at 8 (Doc. 34) (internal citations omitted).

Although the Federal Rules of Civil Procedure do not explicitly provide for motions for reconsideration, Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to "revise[] at any time" "any order or other decision … [that] does not end the action." *Austin v. Kroger Texas, L.P.*, 846 F.3d 326, 336 (5th Cir. 2017) (citing Fed. R. Civ. P. 54(b)). Under Rule 54(b), the court generally reconsiders evidence before it at the time of its prior opinion and order; however, "a district court has the inherent procedural power to

reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Iturralde v. Shaw Group, Inc.*, 512 F. App'x 430, 432 (5th Cir. 2013) (internal quotation marks and citation omitted).

Section 6 of the Factoring Agreement contains, in relevant part, a repurchase provision that provides:

> **Repurchase of Accounts**. Triumph may demand that [Region] Repurchase a Purchased Account by requiring payment or at Triumph's option, by debiting the Reserve Account of the then unpaid Face Amount of such Purchased Account together with any unpaid fees including those described in Section 3 above, in connection with each of the following:
>
> 6.1. Any Purchased Account in respect to which (a) a Payor has indicated an inability or unwillingness to pay the Purchased Account when due or (b) ***remains unpaid <u>beyond</u> the Repurchase Period*** or (c) in Triumph's Discretion a Payor qualifies as Insolvent; . . .

Factoring Agreement § 6.1(b) (emphasis added). The Factoring Agreement in Section 1.35 states the "Repurchase Period" is provided in Schedule A. *Id.* § 1.35. Schedule A to the Factoring Agreement, entitled "Pricing and Terms," has a Repurchase Period of 90 days. Factoring Agreement at Sch. A.

Under this plain and unambiguous language, and applying the principles of contract interpretation previously set out by the court, *see supra* Sec. III.A., the court agrees with Triumph that Sections 6.1(b) and 1.35, read together, provide Triumph with the absolute right to demand that a client (Region) repurchase any Purchase Accounts that remain unpaid by the account debtor (Bear) and outstanding *beyond* 90 days after the payment date of "Net 7" days from the invoice date establishing the maturity dates, not *within* 90 days, as Defendants represented and the court previously held in *Triumph I*. The word "within" does not appear in Section 6.1(b) and, as such,

the court reconsiders and modifies that portion of *Triumph I* in which it agreed with Defendants' mistaken interpretation of the operative language.

In addition to the plain and unambiguous language of Sections 6.1(b) and 1.35 of the Factoring Agreement, the court's research shows that in her Findings, Conclusions, and Recommendation with respect to a motion referred to her by the undersigned, United States Magistrate Judge Renée Harris Toliver, confronted with identical language in a factoring agreement, interpreted "Repurchase Period" in the manner urged by Triumph:

> Here, Plaintiff and TCS entered into the Factoring Agreement, whereby Plaintiff bought the right to collect payments on the Purchased Accounts from TCS. The Factoring Agreement also included **a provision that allowed Plaintiff to demand that TCS repurchase a Purchased Account** when an Account Debtor indicated an inability or unwillingness to make payments when due, or **when a Purchased Account remained unpaid <u>beyond</u> the repurchase period**.

*Commerce Com. Credit, Inc. v. TCS Trucking, Inc.*, No. 3:17-CV-0144-L-BK, 2017 WL 7596864, at *3 (N.D. Tex. Nov. 1, 2017) (emphasis added). The court concludes that the "Repurchase Period" is simply a ninety-day grace period **after which** Triumph may elect to exercise repurchase rights for any purchased accounts, rather than an expiration-of-rights deadline within which Triumph must demand repurchase of a Purchased Account.

Triumph's Amended Complaint contains well pleaded allegations applicable to Section 6.1(b) sufficient to defeat Defendants' motion to dismiss. Specifically, Triumph alleges:

> Pursuant to Section 6 of the Factoring Agreement, Triumph was entitled to make its pre-April 2020 oral demand and its August 2021 Written Demand . . . upon Region to "Repurchase" the Matured Unpaid Bear Invoices since . . . b. the Matured and Unpaid Bear Invoices remained unpaid beyond the Repurchase Period (i.e., at least 90 days after the payment date of "Net 7" days from the invoice date establishing the maturity dates[.])
>
> ***
>
> Triumph waited until the expiration of the "Repurchase Period" (as defined in Section 1.35) which period pursuant to Schedule A was 90 days after maturity of

the Matured and Unpaid Invoices, within which to make its Demands that Region "Repurchase" (as defined in Section 1.6 of the Factoring Agreement) of all such Purchased Accounts together with any unpaid fees therewith (as provided in subsections 6.1 and 6.4 of the Factoring Agreement.

Am. Compl. ¶¶ 44-45. Triumph alleges that Region failed to satisfy its obligations under Section 6.1(b) and, as a direct and proximate result, it has been damaged and is entitled to recover its compensatory damages. *Id.* ¶¶ 51-52. Triumph also alleges that that C. Gombos and F. Gombos each beached his or her personal guaranty, and EZConnect breached its corporate guaranty "by failing to pay to Triumph, upon demand, the entire indebtedness and all losses, costs, deficiencies, attorneys' fees and expenses which have been and will be suffered by Triumph due to Region's default as more specifically described in Count I in paragraph 49." *Id.* ¶¶ 57, 64; *see also id.* ¶ 71.

For these reasons, and viewing all well-pleaded allegation in the Amended Complaint as true, the court concludes that Triumph has adequately alleged a breach of Section 6.1(b) of the Factoring Agreement and **denies** Defendants' Motion to Dismiss on this basis.

> *b.   Sections 6.1(a), 6.2, 6.4, and 10*

Defendants fail to specifically challenge whether Triumph has adequately alleged a breach of contract claim under Sections 6.1(a), 6.2, 6.4, and 10 of the Factoring Agreement. Nevertheless, the court has considered the Amended Complaint and determines that, based on the newly added averments contained in the Amended Complaint, Triumph had adequately alleged a violation of Sections 6.1(a), 6.2 and 6.4 of the Factoring Agreement that contain independent trigger events of default and do not involve a "Repurchase Period." As alleged in Triumph's Amended Complaint, *inter alia*, Region breached Section 6.1(a) (because Bear indicated an inability or unwillingness to pay the Matured and Unpaid Invoices); Section 6.2 (because "Region and Triumph's right to receive payment of the Purchased Accounts was disputed, in part, by Bear"); and Section 6.4

(because Region committed an Event of Default or upon the termination date of the Factoring Agreement). *See* Am. Compl. ¶¶ 44-46.

In addition, Triumph's Amended Complaint adequately alleges that Region breached the Factoring Agreement by having committed additional "Events of Default" under Section 10.2 of the Factoring Agreement. Section 10 of the Factoring Agreement, titled "Default," provides, in relevant part, as follows:

> 10.1. Events of Default. The following will constitute an Event of Default hereunder: (a) [Region's] failure to pay any Obligation or perform any provision under this Agreement or any other agreement now or hereafter entered into with Triumph; (b) any covenant, warranty or representation contained in this Agreement proves to be false in any way, howsoever minor, . . . (d) any guarantor fails to perform or observe any of such guarantor's duties or obligations to Triumph . . .; (f) Triumph, in good faith, deems itself insecure with respect to the prospect of repayment or performance of the Obligations or any other required performance under this Agreement.

*Id.* at Ex. A (Factoring Agreement § 10.1). Section 10.2 of the Factoring Agreement titled "Effect of Default," states that "[u]pon the occurrence of any Event of Default, in addition to any rights Triumph has under this Agreement or applicable law, Triumph may, without notice, immediately terminate this Agreement and/or declare all Obligations immediately due and payable and all fees shall accrue and be payable at the Default Fees rate." *Id.* at Ex. A (Factoring Agreement § 10.2).

Triumph contends that these additional "Events of Default" include "the guarantors' failure to perform or observe the guarantors' duties or obligations to Triumph," and "due to Triumph having learned . . . that Bear had at first purportedly promised to pay all Matured and Outstanding Invoices and then immediately thereafter failed to do so" and "failed and refused to explain any basis for its failure to do so or communicate with Triumph," at which time Triumph, in good faith, deemed itself insecure with respect to the prospect of repayment or performance of the Obligations or any other required performance under this Agreement. *See* Am. Compl. ¶ 49.

**Memorandum Opinion and Order - Page 22**

For these reasons, the court concludes that Triumph has adequately alleged a breach of Sections 6.1(a), 6.2, 6.4, and 10 of the Factoring Agreement. Although it is not clear from Defendants' motion that they challenged the Amended Complaint with respect to these particular provisions, out of abundance of caution, insofar as Defendants intended to move to dismiss Triumph's breach of contract claims arising from Sections 6.1(a), 6.2, 6.4, and 10 of the Factoring Agreement, the court **denies** Defendants' Motion to Dismiss on this basis.

    *2. Notice*

Defendants also contend that the notices that Triumph alleges it made requiring Region to repurchase the accounts under Section 6.1(b) of the Factoring Agreement were untimely and inadequate. The court disagrees.

In the Amended Complaint, Triumph alleges:

> [O]n August 19, 2021, counsel to Triumph issued a Settlement Demand Letter to counsel to Region which expressly made a "Pre-Suit Settlement Offer" demanding that Region agree to pay Triumph $2,789,692.95 which amount constituted an undisputed amount due in respect to the "Repurchase" (as defined in Paragraph 1.36 of the Factoring Agreement) price of the Matured and Unpaid Invoices.

Am. Compl. ¶ 38 and Ex. E (August 2021 Written Demand). The court concludes that, insofar as a written demand is required, Triumph's Amended Complaint sufficiently alleges that it provided notice of its right to exercise a demand to repurchase the invoices under Section 6.1(b) of the Factoring Agreement. In addition, the court rejects Defendants' contention that the demand was untimely, as Defendants' argument hinges on its erroneous interpretation of the "Repurchase Period," which the court has previously rejected. *See supra* Sec. III.B.1.a.

Further, as Triumph correctly states, Defendants ignore Sections 6.4, 10.2, and 12.1 of the Factoring Agreement, none of which requires notice, and under which Triumph was permitted, upon the occurrence of one or more "Events of Default," to, without notice, immediately terminate

the Factoring Agreement and declare all "Obligations" immediately due and payable. *See* Am. Compl. ¶¶ 47, 50, 51; Factoring Agreement §§ 6.4, 10.2, and 12.1.

For these reasons, the court concludes that, insofar as notice is required under Section 6.1(b) of the Factoring Agreement, Triumph has adequately alleged it provided notice and, accordingly, the court **denies** Defendants' Motion to Dismiss on this basis.[2]

### IV. Defendants' Motion for Summary Judgment

In the alternative, Defendants move for summary judgment.[3]  Defendants contend they are entitled to summary judgment because Triumph has taken an inconsistent position by asserting that it has an ownership interest in the Purchased Accounts that it purchased from Region under the Factoring Agreement. *See* Defs.' Br. 5-6, 9 (Doc. 25); Defs.' Reply 6 (Doc. 38). Defendants argue that Triumph "filed a petition in Johnson County Kansas in April of 2020 stating that it was the sole holder of the right to Region's accounts." Defs.' Br. 7. They also contend that Triumph "filed a proof of claim in Federal Bankruptcy Court contending it had the rights to the monies it now seeks here." *Id.* According to Defendants: "[Triumph] cannot have it both ways – claiming to own the accounts and then proceeding here for the same accounts." *Id.* In response, Triumph argues that "neither of those statements establish that Triumph has taken any inconsistent position as a matter of law. To the contrary, all of Triumph's actions have been consistent." Pl.'s Br. in Resp. to Defs.' Mot. Summ. J. 9 (Doc. 36).

---

[2] As the court has concluded that the August 2021 Written Demand satisfies any notice requirement, it does not consider (i) Triumph's allegation that it also made an oral demand, or (ii) Defendants' argument in support of its motion to dismiss or, alternatively, for summary judgment, that an oral demand was not made or, if it was made, it was insufficient under the Factoring Agreement.

[3] The court notes that, at times, given the overlapping nature of the issues and the brevity of Defendants' legal submissions, it is difficult for the court to decipher which arguments Defendants are making in support of their motion to dismiss and which are being made in support of their motion for summary judgment. Nevertheless, the court believes that this memorandum opinion and order "covers the waterfront."

Although not entirely clear, Defendants appear to be invoking the doctrine of judicial estoppel and also arguing that Triumph made a judicial admission that prevents it from asserting its claims in this lawsuit. The court considers Defendants' invocation of the doctrines of judicial estoppel and judicial admission in turn.

## A. Judicial Estoppel

"Judicial estoppel is an equitable doctrine, the purpose of which is 'to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest.'" *Arkansas v. Wilmington Tr. Nat'l Ass'n*, No. 3:18-CV-1481-L, 2020 WL 1249570, at *6 (N.D. Tex. Mar. 16, 2020) (quoting *Cox v. Richards*, 761 F. App'x 244, 246 (5th Cir. 2019) (cleaned up) (citations omitted)). "Judicial estoppel has three elements: (1) The party against whom it is sought has asserted a legal position that is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Allen v. C & H Distribs., L.L.C.*, 813 F.3d 566, 572 (5th Cir. 2015) (quoting *In re Flugence*, 738 F.3d 126, 129 (5th Cir. 2013)). The third element of judicial estoppel, inadvertence, is met when a party either "did not know of the inconsistent position or . . . had no motive to conceal it from the court." *Id.* at 573 (quoting *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 601 (5th Cir. 2005)). A party does not know of an inconsistent position when he or she is not aware "of facts giving rise to [the] inconsistent position[ ]." *Id.* at 573 (citation omitted).

Here, judicial estoppel is not applicable because Triumph has not "asserted a legal position that is 'plainly inconsistent' with a position asserted in a prior case." *In re Oparaji*, 698 F.3d 231, 235 (5th Cir. 2012) (citation omitted). The court has reviewed Triumph's averments in the Joint Petition against Bear in the District Court of Johnson County, Kansas, and its Proof of Claim filed in the Bear Bankruptcy, and concludes that Triumph has not made statements that are "plainly

inconsistent" with those it has made in this action. *See* Pl.'s App. 47-166 (Proof of Claim) (Doc. 37); *id.* at 21-43 (Kansas Petition) (Doc. 37). The court concludes that Triumph's statements in both have been consistent in asserting that Triumph acquired ownership of all of the outstanding and unpaid Purchased Accounts under the Purchasing Agreement, and it retains all such rights until such time as Region satisfies its duty to repurchase the accounts.

In addition, as Defendants concede (*see* Defs.' Brief), there is nothing to suggest that either the District Court of Johnson County, Kansas, or the Bankruptcy Court has accepted Triumph's position. *See Ahrens v. Perot Sys. Corp.*, 205 F.3d 831, 833 (5th Cir. 2000) (noting that for judicial estoppel to apply, the party to be estopped "must have convinced the court to accept that previous position.") (citation omitted).

In summary, Defendants have failed to persuade the court that Triumph, as the party against whom estoppel is sought, has asserted a legal position that is plainly inconsistent with a prior position, or has convinced a court to accept that previous position. Accordingly, the court **denies** Defendants' Motion for Summary Judgment insofar as it is premised on the doctrine of judicial estoppel.

### B.  Judicial Admission

"A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them." *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476 (5th Cir. 2001). Whereas judicial estoppel deals with a party's positions on a legal issue, judicial admission concerns a party's factual representations. When applicable, a judicial admission "has the effect of withdrawing a fact from contention." *Id.* For the doctrine to apply, the purported admission "must be made intentionally as a waiver, releasing the opponent from proof of fact." *United States v. Chavez-Hernandez*, 671 F.3d 494, 501 (5th Cir. 2012) (quoting *Martinez*,

**Memorandum Opinion and Order - Page 26**

244 F.3d at 476). Like judicial estoppel, the doctrine of judicial admission cannot be used to exclude a party's present statement unless it is "inconsistent with or contrary to" its past statement. *Giddens v. Community Educ. Ctrs., Inc.*, 540 F. App'x 381, 390-91 (5th Cir. 2013) (citation omitted). Whether to treat prior statements in briefs as binding judicial admissions of fact is within the court's discretion. *City Nat'l Bank v. United States*, 907 F.2d 536, 544 (5th Cir. 1990).

As with judicial estoppel, the court concludes that the doctrine of judicial admission does not apply, since Triumph's prior statements in the Bear Bankruptcy and in the Joint Petition in the District Court of Johnson County, Kansas, are not "contrary to a fact essential to the theory of recovery." *Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 329 (5th Cir. 2001). Accordingly, the court **denies** Defendants' Motion for Summary Judgment insofar as it is premised on the doctrine of judicial admissions.[4]

## V.  Conclusion

For the reasons herein set forth, the court **denies** the Motion of All Defendants to Dismiss Plaintiff's Amended Complaint or for Summary Judgment (Doc. 24).

**It is so ordered** this 19th day of September, 2022.

Sam A. Lindsay
United States District Judge

---

[4] To the extent Defendants move for summary judgment based on the Affidavit of F. Gombos in which he stated that he did not receive notice of Triumph's request for repurchase, oral or otherwise, until after expiration of the Repurchase Period (*see* Defs.' Brief 8-9), the court **denies** the motion as **moot** in light of its prior determination that Defendants' interpretation of the "Repurchase Period" is erroneous, and that the August 2021 Written Demand satisfies any written notice requirement under the Factoring Agreement. *See supra* Secs. III.B.1.a. and III.B.1.b.

**Memorandum Opinion and Order - Page 27**